1  Michael W. Chen, Esquire
   Arizona Bar No. 17967
2  THE COOPER CASTLE LAW FIRM
   f/k/a THE COOPER CHRISTENSEN LAW FIRM, LLP
3  820 South Valley View Blvd.
   Las Vegas, NV 89107
4  (702) 435-4175/(702) 435 4181 (facsimile)
   Loan No. 203768932 / Our File No. 08-01-0488

5
   Attorney for Secured Creditor
6  Wells Fargo Bank, N.A. successor by merger to Wells Fargo Home Mortgage, Inc. fka Norwest
   Mortgage, Inc.

7                    UNITED STATES BANKRUPTCY COURT
                          DISTRICT OF ARIZONA
8

9  In re:

10
       JEAN L. HAYNES,                        CHAPTER 13
11     JOHN CHARLES HAYNES

12             Debtor(s)
                                              BANKRUPTCY NO.: 07-02041-TUC-JMM
13
   Wells Fargo Bank, N.A. successor by
14 merger to Wells Fargo Home Mortgage,
   Inc. fka Norwest  Mortgage, Inc.
15
               Movant(s)
16 v.

17     JEAN L. HAYNES
       JOHN CHARLES HAYNES, Debtor(s)
18     Dianne Kerns, Trustee,

               Respondant(s)
19

20
       **MOTION FOR RELIEF FROM THE AUTOMATIC STAY**
21         **RE: DEBTOR AND BANKRUPTCY ESTATE**

22 TO:   **JEAN L. HAYNES and JOHN CHARLES HAYNES, DEBTOR(S)**

23 TO:   **Eric  Ollason, Esq., ATTORNEY FOR THE DEBTOR(S)**

24 TO:   **Dianne Kerns, CHAPTER 13, TRUSTEE**

25

TO:  **ALL INTERESTED PARTIES**

TO:  **THE CLERK OF THE ABOVE-ENTITLED COURT**

Secured Creditor, Wells Fargo Bank, N.A. successor by merger to Wells Fargo Home Mortgage, Inc. fka Norwest Mortgage, Inc., hereby moves this Honorable Court for an order terminating the automatic stay re: Debtor and Bankruptcy Estate to allow Wells Fargo Bank, N.A. successor by merger to Wells Fargo Home Mortgage, Inc. fka Norwest Mortgage, Inc. to proceed with and complete any and all contractual and statutory remedies available pertaining to Wells Fargo Bank, N.A. successor by merger to Wells Fargo Home Mortgage, Inc. fka Norwest Mortgage, Inc.'s security interest held in the real property located at 12229 N. Sora Place, Marana, AZ 85653 ("Property"). This Motion is made and based on an amalgamation of the instant pleading and exhibits and all other pleadings, statements and schedules on file herein.

## FACTS

1. On or about December 18, 2006, a loan was originated on the property located at 12229 N. Sora Place, Marana, AZ 85653, secured and encumbered by a Deed of Trust, which is in favor of Wells Fargo Bank, N.A. successor by merger to Wells Fargo Home Mortgage, Inc. fka Norwest Mortgage, Inc. A copy of the note and deed of trust are attached hereto as Exhibit "A".

2. The principal balance of the note at the time of this motion is approximately $206,743.51.

3. The regular monthly payment under the note is due on the 1st day of each month and the amount required is $1,381.04. A late fee of $55.24 applies for each and every payment, which is not received timely. Interest accrues at the rate of 6.50%.

4. Debtor(s) filed their voluntary Chapter 13 on October 16, 2007.

5. The Debtors' first post-petition payment was to be made on November 01, 2007.

6. The Debtors' Chapter 13 plan was set for confirmation and provides that Wells Fargo Bank, N.A. successor by merger to Wells Fargo Home Mortgage, Inc. fka Norwest Mortgage, Inc. is to receive direct payments outside the plan for post-petition payments. The Debtors have failed to make said direct payments for the months of December 2007 through February 2008 to the 1st.

7.  The Debtor owes a total of $2,762.08 in post-petition arrears as described in the Affidavit in Support of Motion for Relief, attached hereto as Exhibit "B". In addition, the February 1, 2008 monthly payment has now come due in the amount of $1,381.04 and an additional Bankruptcy Attorney Fee of $650.00 and Filing fee of $150.00 has been incurred in bringing this Motion.

8.  The Debtor owes a total of $9,823.99 in pre-petition arrears as described in the Proof of Claim filed on October 23, 2007.

9.  The total amount of pre-petition and post-petition arrearages, $12,586.07 plus the principal balance $206,743.51 in the total amount of $219,329.58, demonstrate a disproportionate debt balance encumbering the real property at issue as the estimated property value ranges from $204,000.00 to $250,000.00 as indicated in the Zillow estimated property value and the Debtor's own estimation in Schedule A of the voluntary petition. A copy of the Zillow and Debtor's schedule A of the petition are attached hereto as Exhibit "C."

10.  Pursuant to LR 4001(b), a five (5) day notice regarding delinquency was sent via facsimile to the Debtor's Counsel on February 4, 2008. The letter is attached hereto as Exhibit "D". No response has been received from the interested parties.

## POINTS AND AUTHORITIES

The Bankruptcy Code provides for relief from the automatic stay:

> (1) For cause, including the lack of adequate protection of an interest in property of such party in interest;

11 U.S.C. §362(d)(1).

There is very little case law on what constitutes "cause" for purposes of §362(d)(1). Most of the reported §362(d)(1) cases involve the specific example of cause set out in the statute: "lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. §362(d)(1).

The term "adequate protection" is not expressly defined in the Bankruptcy Code, §361 of the Code sets forth three non-exclusive examples of what may constitute adequate protection:

1.    Periodic cash payments;

2.    An additional replacement lien; or

3.    Such other relief as will result in the realization by the creditor of the indubitable equivalent of its interest in the property.

In re Mellor, 734 F.2d 1396, 1400 (9th Cir. 1984); In re Monroe Park, 17 B.R. 934, 937 (D.Del. 1982).

The concept of adequate protection requires Debtors to propose some form of protection that will preserve the secured creditor's interest in the collateral pending the outcome of the bankruptcy proceeding. In re Monroe Park, 17 B.R. at 937.

Debtor has not proposed or Wells Fargo Bank, N.A. successor by merger to Wells Fargo Home Mortgage, Inc. fka Norwest Mortgage, Inc. any form of adequate protection, and under 11 U.S.C. §362(d) the Debtor must demonstrate that Wells Fargo Bank, N.A. successor by merger to Wells Fargo Home Mortgage, Inc. fka Norwest Mortgage, Inc. has been adequately protected. See also In re Schaller, 27 B.R. 959 (W.D. Wis. 1983). Any attempts by the Debtor to sell the property or repay the arrearages past a six-month period will serve to create a default in violation of the basis tenets of adequate protection rather than curing the same.

If there exists sufficient equity in secured property, the collateral itself may provide adequate protection. Although the existence of such an "equity cushion" as a method of adequate protection is not specifically mentioned in the Code, it is the classic form of protection for a secured debt. In re Mellor, 734 F.2d at 1400. An equity cushion is defined as the "value in the property above the amount owed to the creditor with a secured claim, that will shield that interest from loss due to any

decrease in the value of the property during the time the automatic stay re: Debtor and Bankruptcy Estate remains in effect." La Jolla Mortgage Fund v. Rancho El Cajon Assoc., 18 B.R. 283, 287 (S.D. Cal 1982) citing from In re Roane, 8 B.R. 997, 1000 (E.D. Pa. 1981), Aff'd sub nom., Employees Retirement Fund v. Roane, 14 B.R. 542 (E.D. Pa. 1981).

The Code provides that the valuation of collateral is to be made in light of both the reason the valuation is being made, and the proposed use or disposition of the collateral. 3 Collier on Bankruptcy, §506.04[2], at 506-25 (15th ed. 1979). The valuation of collateral for purposes of a lift-stay motion differs from that at the plan-confirmation stage. In re B.B.T., 11 B.R. 224, 229 n.10 (D.Nev.1981). In the present context, for the determination of whether adequate protection exists, the appropriate value is the wholesale/liquidation value because the liquidation value is what a lift-stay movant will most likely receive upon termination of the automatic stay re: Debtor and Bankruptcy Estate after all fees and costs of foreclosure, sale and conveyance are considered. Wells Fargo Bank, N.A. successor by merger to Wells Fargo Home Mortgage, Inc. fka Norwest Mortgage, Inc. would assert that any equity cushion which might exist will be fully exhausted by interest which continues to accrue, foreclosure costs and attorneys' fees.

More importantly, even the actual existence of an equity cushion does not constitute adequate protection, especially if in the event where the Debtor is not paying taxes or insurance premiums on the property or is allowing the condition or value of the property to deteriorate. In re Pleasant Valley, Inc., 2 C.B.C.2d 325 (D.Nev. 1980); In re Bouquet Investments, Inc., 32 B.R. 988 (C.D. Cal. 1983). Relief for cause may also be granted where there has been improper management of collateral. See In re G.W.F. Investments, Ltd., 32 B.R. 308 (S.D. Ohio, 1983). Thus, relief from the automatic stay must be granted if the Debtor cannot establish that the property interest is adequately protected. In re Bradley, 3 B.R. 313, 315-16 (Bankr. E.D. Va. 1980).

Procedurally, a lift-stay movant has the burden to establish prima facie facts entitling it to relief. See In re Elmore, 94 B.R. 670 (Bankr. C.D.Cal. 1988). To establish a prima facie case, the moving creditor must demonstrate the following:

> The Debtor owes the obligation to the Creditor;
> There is a valid security interest from which relief from the stay may be sought; or
> "Cause" justifying relief from the stay.

In re Kin, 71B.R. 1011, 1015 (Bankr. C.D.Cal. 1987). After a creditor has established its prima facie case, the burden of proof shifts to the debtor to prove that there is no cause to terminate the automatic stay. 11 U.S.C. § 362(g)(2); In re Ellis, 60 B.R. 432, 435 (9th Cir. B.A.P. 1985) citing In re Gauvin, 24 B.R. 578 (9th Cir. B.A.P. 1982).

It is clear in the instant case that Wells Fargo Bank, N.A. successor by merger to Wells Fargo Home Mortgage, Inc. fka Norwest Mortgage, Inc. is not protected by an "equity cushion" or any other adequate protection measure. Accordingly, Wells Fargo Bank, N.A. successor by merger to Wells Fargo Home Mortgage, Inc. fka Norwest Mortgage, Inc. has demonstrated its prima facie case that cause exists "justifying relief from the automatic stay" under Bankruptcy Code § 362(d)(1). Based upon the foregoing authority Wells Fargo Bank, N.A. successor by merger to Wells Fargo Home Mortgage, Inc. fka Norwest Mortgage, Inc. is entitled to an order terminating the automatic stay re: Debtor and Bankruptcy Estate. Wells Fargo Bank, N.A. successor by merger to Wells Fargo Home Mortgage, Inc. fka Norwest Mortgage, Inc. respectfully requests that the Court determine that the Creditor is not adequately protected and allow the Creditor to lift the stay re: Debtor and Bankruptcy Estate and secure its collateral at no further costs to the Estate and its unsecured creditors.

WHEREFORE, Wells Fargo Bank, N.A. successor by merger to Wells Fargo Home Mortgage, Inc. fka Norwest Mortgage, Inc., SECURED CREDITOR respectfully requests:

1. That relief from the automatic stay re: Debtor and Bankruptcy Estate be granted to allow Wells Fargo Bank, N.A. successor by merger to Wells Fargo Home Mortgage, Inc. fka Norwest Mortgage, Inc. to foreclose on its lien and/or use any and all other methods both contractually and statutorily to regain possessory interest and title to the subject property under the note and deed of trust referenced

1    herein and attached hereto;

2    2.    Award reasonable attorneys fees and costs to Wells Fargo Bank, N.A. successor
           by merger to Wells Fargo Home Mortgage, Inc. fka Norwest Mortgage, Inc.;

3    3.    Waive the 10 day requirement under Fed R. Bank.Pro. 4001(a)(3); and

4    4.    Award all other remedies that the Court may find reasonable and just.

5

6    Date:    _____2/11/08_____    Michael W. Chen, Esquire
7                                 Arizona Bar No. 17967
                                  THE COOPER CASTLE LAW FIRM
8                                 820 South Valley View Boulevard
                                  Las Vegas, Nevada  89107
9                                  (702) 435-4175
                                  Attorney for Secured Creditor-
10                                Wells Fargo Bank, N.A. successor by merger to
                                  Wells Fargo Home Mortgage, Inc. fka Norwest
11                                Mortgage, Inc.

# NOTE

## NOTICE: THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.

**December 18,2006**                    **TUCSON**                    **ARIZONA**
[Date]                                  [City]                        [State]

**12229 N SORA PLACE, MARANA, ARIZONA 85653**

[Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $  **207,500.00** (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **Universal American Mortgage Company, LLC, a Florida limited liability company**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of  **6.500 %.**

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

### 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **1st** day of each month beginning on **February 01, 2007** . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **January 01, 2037** , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **700 NW 107th Avenue  3rd Floor  Miami, FL 33172-3139**
or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $  **1,311.55** .

### 4. BORROWER'S RIGHT TO PREPAY

The Borrower shall have the right to prepay at any time, without premium or fee, the entire indebtedness or any part thereof not less than the amount of one installment, or $100.00, whichever is less. Any Prepayment in full of the indebtedness shall be credited on the date received, and no interest may be charged thereafter. Any partial Prepayment made on other than an installment due date need not be credited until the next following installment due date or 30 days after such Prepayment, whichever is earlier.

**MULTISTATE FIXED RATE NOTE**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
**Amended for Veterans Affairs**

**Form 3200 1/ 01**
**Amended 6/00**

-5G (0005)
VMP MORTGAGE FORMS - (800)521-729

Page 1 of 3

Initials

EXHIBIT A

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **4.000 %** of my overdue payment. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. ALLONGE TO THIS NOTE

If an allonge providing for payment adjustments or for any other supplemental information is executed by the Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐ Graduated Payment Allonge     ☐ Other [Specify]     ☐ Other [Specify]

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Regulations (38 C.F.R. Part 36) issued under the Department of Veterans Affairs ("VA") Guaranteed Loan Authority (38 U.S.C. Chapter 37) and in effect on the date of loan closing shall govern the rights, duties and liabilities of the parties to this loan and any provisions of this Note which are inconsistent with such regulations are hereby amended and supplemented to conform thereto.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
JOHN C HAYNES     -Borrower

_____ (Seal)
JEAN L HAYNES     -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

*[Sign Original Only]*

PAY TO THE ORDER OF
WITHOUT RECOURSE          WELLS FARGO BANK, N.A.

Universal American Mortgage Company LLC

Brenda Henry, Assistant Secretary

WITHOUT RECOURSE
PAY TO THE ORDER OF

Wells Fargo Bank, N.A.

By _Lori K. Venegoni_
Lori K. Venegoni
Vice President Loan Documentation

RESIDENTIAL FUNDING COMPANY, LLC        Date: FRI, DEC 29, 2006     **4033037**
7501 Wisconsin Avenue
Suite 900
Bethesda, MD 20814     *907729765747*
301-215-6200                       Tracking#: 907729765747

WELLS FARGO BANK, N.A.   (15)   JAN 0 2 P.M.
4600 W. WABASH AVENUE
MAIL STOP X2803-02K
SPRINGFIELD     IL 62711             Seller: UNIVERSAL AMERICAN MTG CO, LLC
ATTN:

    Enclosed with this Bailee Letter are 15 original promissory notes evidencing the mortgage
loans described on the attached schedule, along with other related documents (hereinafter collec-
tively referred to as the "Pledged Mortgages"), for your inspection prior to purchase pursuant to
commitment(s) to purchase such Pledged Mortgages from the above-referenced Seller. A security
interest in the Pledged Mortgages and proceeds thereof has been granted to RESIDENTIAL FUNDING
COMPANY, LLC ("RFC"), in accordance with the Seller's Warehousing Credit and Security Agreement with
RFC. RFC is the Collateral Agent for the Lenders pursuant to a certain Collateral Agency Agreement
by and among the Company, RFC as Credit Agent for the Lenders, and RFC as Collateral Agent.

    Pledged Mortgages now or hereafter delivered to you are to be held by you as a bailee and agent
for the benefit of RFC, subject to only RFC's direction and control until released as provided here-
in. Immediately upon purchase by you, the purchase proceeds ("Purchase Proceeds") of the Pledged
Mortgages must be wire transferred in immediately available funds to:

        JPMorgan Chase Bank, National Association     Acct. No. 1078591
        New York, New York                      Attn: Daniel Ross
        ABA No. 021000021                     Re: RFC/UNIVERSAL AMERICAN MTG CO, LLC

    RFC has no obligation to release its security interest in the Pledged Mortgages unless RFC
receives the Purchase Proceeds for the Pledged Mortgages. RFC acknowledges that the Purchase
Proceeds for the Pledged Mortgages may be less than the advanced amount set forth on the attached
schedule. RFC will only release its security interest in the Pledged Mortgages if the Purchase
Proceeds are not reduced by adjustments or offsets unrelated to the Pledged Mortgages. Subject to
the foregoing, upon RFC's receipt of the Purchase Proceeds, its security interest in the Pledged
Mortgages shall terminate without further action.

    Pledged Mortgages which are not accepted for purchase must be returned immediately to RFC at
the above address, to the attention of the undersigned. RFC reserves the right at any time, prior to
receipt of the Purchase Proceeds, to demand the return of the Pledged Mortgages. In the event that
you do not accept any Pledged Mortgage for purchase, you will execute and deliver to RFC an
assignment in recordable form of such Pledge Mortgage and will endorse the promissory note
evidencing such Pledge Mortgage in blank, but without recourse (assuming the promissory note has
been endorsed to you).

    You are not to honor any communications from Seller relating to any Pledged Mortgages without
the written consent of RFC, or until RFC has received the Purchase Proceeds. You are not to deliver
any Pledged Mortgages to any third party without the written consent of RFC. In no event shall the
Pledged Mortgages enclosed herein be returned to Seller.

    No deviation in performance of the terms of any previous Bailee Letter will alter any of your
duties or responsibilities as set forth in this Bailee Letter.

    By accepting the Pledged Mortgages for inspection, you are bound by the terms of this Bailee
Letter, and the notices stated herein, whether or not you sign or return this Bailee Letter to RFC.
We ask that you promptly date, sign and return a copy of this Bailee Letter to RFC at the above
address.

303768932

| | | |
|---|---|---|
| F. ANN RODRIGUEZ, RECORDER | DOCKET: | 12954 |
| RECORDED BY: SGP | PAGE: | 7419 |
| DEPUTY RECORDER | NO. OF PAGES: | 21 |
| 1456 PE8 | SEQUENCE: | 20062431438 |
| TTISE | | 12/19/2006 |
| UNIVERSAL AMERICAN MORTGAGE CO | DOT | 17:30 |
| 311 PARK PL BLVD STE 500 | | |
| CLEARWATER FL 33759 | MAIL | |
| | AMOUNT PAID $ | 26.00 |



Patricia Gavin
Universal American Mortgage Company, LLC
1725 West Green Tree Drive
TEMPE, ARIZONA 85284

l0128185 -NA ————[Space Above This Line For Recording Data]————

# DEED OF TRUST

MIN 100059600068080675

Loan # 0006808067

D06A01AZ

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated **December 18, 2006** together with all Riders to this document.
(B) "Borrower" is **JOHN C HAYNES AND JEAN L HAYNES, HUSBAND AND WIFE**

Borrower is the trustor under this Security Instrument. Borrower's mailing address is **12229 N SORA PLACE, MARANA, AZ 85653**
(C) "Lender" is **Universal American Mortgage Company, LLC**

Lender is a **limited liability company**
organized and existing under the laws of **Florida**

**ARIZONA**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS** Form 3003 1/01 (rev. 6/02)

-6A(AZ) (0208)
Page 1 of 15 Initials:
VMP MORTGAGE FORMS - (800)521-7291

Lender's mailing address is **700 NW 107th Avenue 3rd Floor, Miami, FL  33172-3139**

**(D) "Trustee"** is  **North American Title Company**

. Trustee's mailing address is

**3200 E. Camelback Rd. #150, PHOENIX AZ 85018**

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F) "Note"** means the promissory note signed by Borrower and dated **December 18, 2006**
The Note states that Borrower owes Lender **Two Hundred Seven Thousand Five Hundred and 00/100**                                                                              **Dollars**
(U.S. $      **207,500.00**   ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **January 01, 2037**

**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [ ] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [X] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [X] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items"** means those items that are described in Section 3.

**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to

time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
**County**                                              of **PIMA**                                       :
　　　　　[Type of Recording Jurisdiction]                              [Name of Recording Jurisdiction]
**LOT 77 OF GLADDEN FARMS BLOCK 21, A SUBDIVISION OF PIMA COUNTY, ARIZONA, ACCORDING TO THE MAP OR PLAT THEREOF OF RECORD IN THE OFFICE OF THE COUNTY RECORDER OF PIMA COUNTY, ARIZONA, IN BOOK 60 OF MAPS AND PLATS AT PAGE 35 THEREOF.**

Parcel ID Number: **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**                          which currently has the address of
**12229 N SORA PLACE**                                                                    [Street]
**MARANA**                                              [City], Arizona **85653**            [Zip Code]
("Property Address"):

　　　TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

　　　BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

　　　THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

-6A(AZ) (0205)                          Page 3 of 16          Initials:          Form 3003   1/01 ( rev. 6/02)

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

-6A(AZ) (0208)                    Page 6 of 15                    Form 3003    1/01 ( rev. 6/02)

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall record a notice of sale in each county in which any part of the Property is located and shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. After the time required by Applicable Law and after publication and posting of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at the time and place designated in the notice of sale. Trustee may postpone sale of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the county treasurer of the county in which the sale took place.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender may, for any reason or cause, from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**25. Time of Essence.** Time is of the essence in each covenant of this Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _John C Haynes_____ (Seal)
                                   **JOHN C HAYNES**            -Borrower

_____          _Jean L Hay_____ (Seal)
                                   **JEAN L HAYNES**            -Borrower

_____ (Seal)   _____ (Seal)
                  -Borrower                          -Borrower

_____ (Seal)   _____ (Seal)
                  -Borrower                          -Borrower

_____ (Seal)   _____ (Seal)
                  -Borrower                          -Borrower

**STATE OF ARIZONA,**                                    County ss: *Pima*

The foregoing instrument was acknowledged before me this 19th day of December 2006
by **JOHN C HAYNES , JEAN L HAYNES**



OFFICIAL SEAL
Y. CLARK
NOTARY PUBLIC-ARIZONA
PIMA COUNTY
My Comm Exp. Nov. 1, 2007

_____
Notary Public

VMP -6A(AZ) (0206)                    Page 15 of 15         Initial _____ Form 3003   1/01 ( rev. 6/02)

# PLANNED UNIT DEVELOPMENT RIDER

MIN # 100059600068080675

THIS PLANNED UNIT DEVELOPMENT RIDER is made this **18th** day of **December, 2006** , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to **Universal American Mortgage Company, LLC, a Florida limited liability company**

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at: **12229 N SORA PLACE, MARANA, ARIZONA 85653**

[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in **Declaration of Restrictions and Protective Covenants, as recorded in, BOOK 60, PAGE 35**

(the "Declaration"). The Property is a part of a planned unit development known as **GLADDEN FARMS - GREENFIELDS GATEWAY**

[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

3150/FNMA

Loan # 0006808067

MERS Phone: (888) 679 - 6377

**MULTISTATE PUD RIDER**- Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3150 1 /01**

Page 1 of 3                    Initials

-7R (04 11)          VMP Mortgage Solutions, Inc. (800)5 21-72 91

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

-7R (0411)                     Page 2 of 3            Initials: [signature]        **Form 3150 1/01**

Loan # 0006808067                                          3150/FNMA

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in
this PUD Rider.

_____ (Seal)          _____ (Seal)
JOHN C HAYNES          -Borrower          JEAN L HAYNES          -Borrower


_____ (Seal)          _____ (Seal)
                       -Borrower                                 -Borrower


_____ (Seal)          _____ (Seal)
                       -Borrower                                 -Borrower


_____ (Seal)          _____ (Seal)
                       -Borrower                                 -Borrower

**MIN Number:** 100059600068080675

## VA GUARANTEED LOAN AND ASSUMPTION POLICY RIDER

# NOTICE: THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.

THIS VA GUARANTEED LOAN AND ASSUMPTION POLICY RIDER is made this **18th** day of **December, 2006** , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Deed to Secure Debt (herein "Security Instrument") dated of even date herewith, given by the undersigned (herein "Borrower") to secure Borrower's Note to **Universal American Mortgage Company, LLC, a Florida limited liability company**

(herein "Lender") and covering the Property described in the Security Instrument and located at **12229 N SORA PLACE, MARANA, ARIZONA 85653**

[Property Address]

VA GUARANTEED LOAN COVENANT: In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

If the indebtedness secured hereby be guaranteed or insured under Title 38, United States Code, such Title and Regulations issued thereunder and in effect on the date hereof shall govern the rights, duties and liabilities of Borrower and Lender. Any provisions of the Security Instrument or other instruments executed in connection with said indebtedness which are inconsistent with said Title or Regulations, including, but not limited to, the provision for payment of any sum in connection with prepayment of the secured indebtedness and the provision that the Lender may accelerate payment of the secured indebtedness pursuant to Covenant 18 of the Security Instrument, are hereby amended or negated to the extent necessary to conform such instruments to said Title or Regulations.

**MULTISTATE VA GUARANTEED LOAN AND ASSUMPTION POLICY RIDER**

MERS Phone: (888) 679 - 6377

LATE CHARGE: At Lender's option, Borrower will pay a "late charge" not exceeding four per centum (4%) of the overdue payment when paid more than fifteen (15) days after the due date thereof to cover the extra expense involved in handling delinquent payments, but such "late charge" shall not be payable out of the proceeds of any sale made to satisfy the indebtedness secured hereby, unless such proceeds are sufficient to discharge the entire indebtedness and all proper costs and expenses secured hereby.

GUARANTY: Should the Department of Veterans Affairs fail or refuse to issue its guaranty in full amount within 60 days from the date that this loan would normally become eligible for such guaranty committed upon by the Department of Veterans Affairs under the provisions of Title 38 of the U.S. Code "Veterans Benefits," the Mortgagee may declare the indebtedness hereby secured at once due and payable and may foreclose immediately or may exercise any other rights hereunder or take any other proper action as by law provided.

TRANSFER OF THE PROPERTY: This loan may be declared immediately due and payable upon transfer of the property securing such loan to any transferee, unless the acceptability of the assumption of the loan is established pursuant to Section 3714 of Chapter 37, Title 38, United States Code.

An authorized transfer ("assumption") of the property shall also be subject to additional covenants and agreements as set forth below:

(a) ASSUMPTION FUNDING FEE: A fee equal to **One Percent**                    ( **1.000** %) of the balance of this loan as of the date of transfer of the property shall be payable at the time of transfer to the loan holder or its authorized agent, as trustee for the Department of Veterans Affairs. If the assumer fails to pay this fee at the time of transfer, the fee shall constitute an additional debt to that already secured by this instrument, shall bear interest at the rate herein provided, and, at the option of the payee of the indebtedness hereby secured or any transferee thereof, shall be immediately due and payable. This fee is automatically waived if the assumer is exempt under the provisions of 38 U.S.C. 3729 (c).

(b) ASSUMPTION PROCESSING CHARGE: Upon application for approval to allow assumption of this loan, a processing fee may be charged by the loan holder or its authorized agent for determining the creditworthiness of the assumer and subsequently revising the holder's ownership records when an approved transfer is completed. The amount of this charge shall not exceed the maximum established by the Department of Veterans Affairs for a loan to which Section 3714 of Chapter 37, Title 38, United States Code applies.

(c) ASSUMPTION ·    · .                    Y: If this obligation is assumed, then the assumer hereby agrees to assume all of the obligations of the veteran under the terms of the instruments creating and securing the loan. The assumer further agrees to indemnify the Department of Veterans Affairs to the extent of any claim payment arising from the guaranty or insurance of the indebtedness created by this instrument.

Loan # 0006808067

D538R1

IN WITNESS WHEREOF, Borrower(s) has executed this VA Guaranteed Loan and Assumption Policy Rider.

JOHN C HAYNES                    -Borrower          JEAN L HAYNES                    -Borrower

_____          -Borrower          _____          -Borrower

_____          -Borrower          _____          -Borrower

_____          -Borrower          _____          -Borrower

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF ARIZONA
### TUCSON DIVISION

IN RE: §
§
JOHN CHARLES HAYNES §    CASE NO. 07-02041-TUC-JMM
JEAN L. HAYNES §
    DEBTORS §    CHAPTER 13
§
§
WELLS FARGO BANK, N. A. SUCCESSOR §
BY MERGER TO WELLS FARGO HOME §
MORTGAGE, INC. FKA NORWEST §
MORTGAGE, INC. §
    MOVANT §
VS
JOHN CHARLES HAYNES
JEAN L. HAYNES

AND DIANNE C. KERNS, TRUSTEE
    RESPONDENTS

### AFFIDAVIT OF ___Kamiylah Chanah-Bey___
### IN SUPPORT OF MOTION FOR RELIEF

I, ___Kamiylah Chanah-Bey_____, hereby state the following:

1.  I am the _Bankruptcy Specialist II_ of Wells Fargo Bank, N. A.

successor by merger to Wells Fargo Home Mortgage, Inc. fka Norwest Mortgage, Inc. ("Wells

Fargo") and its successors and/or assigns, and hereby make this Affidavit in such capacity.

2.  Wells Fargo is a corporation organized under the laws of the State of Iowa, and

is authorized to sue on its own behalf.

3.  I am a custodian of records for Wells Fargo. In the course of my employment, I

have become familiar with the manner and method in which Wells Fargo maintains its books and

records in its regular course of business. Those books and records are managed by employees and

agents whose duty it is to keep the books and records accurately and completely and to record

each event or item at or near the time of the event or item so noted.

4.  I have reviewed the books and records which reveal that Wells Fargo is the

owner and holder of the following Note secured by Deed of Trust of even date therewith covering

certain real property located at 12229 N Sora Place, Marana, Arizona 85653, and more particularly

described in the Deed of Trust. True and correct copies of the Note and Deed of Trust will be

furnished to any interested party who requests same in writing from Movant's attorney.

## EXHIBIT B

a. Note Number xxxxx8932, in the original principal amount of $207,500.00, dated December 18, 2006 and/or Deed of Trust was executed by Original Mortgagors JOHN C. HAYNES and JEAN L. HAYNES to UNIVERSAL AMERICAN MORTGAGE COMPANY, LLC. Said Note was subsequently assigned to Wells Fargo through Assignment of Note.

b. Debtors are in default on their obligations to Wells Fargo in that Debtors have failed to make their installment payments when due and owing pursuant to the terms of the above-described Note.

c. As of January 31, 2008, the total indebtedness was $218,919.21. Debtors are in default on 6 pre-petition payments and 2 post-petition payments (December 2007 at $1,381.04, January 2008 at $1,381.04). The amount of the current monthly mortgage installment payment is $1,381.04, and the monthly late charge is $55.24.

5. By failing to make the regular monthly installment payments due pursuant to the Note, Debtors have not provided adequate protection to Wells Fargo.

6. Wells Fargo has had to retain counsel to represent it before this Court and is incurring legal expenses and attorneys' fees for which it is entitled to reimbursement under the terms of the Note.

The foregoing facts are of my own personal knowledge and belief, and if called upon to appear as a witness, I could, and would, testify competently thereto. I declare under penalty of perjury that to the best of my knowledge, the foregoing facts are true and correct.

Wells Fargo Bank, N. A. successor by merger to Wells Fargo Home Mortgage, Inc. fka Norwest Mortgage, Inc.

By: _Kamiylah Chanah-Bey_

SUBSCRIBED AND SWORN TO BEFORE ME on _February 1_, 200_8_.

_Christina Traynor_
Notary Public in and for the State of South Carolina

7600-N-4352

-- beds, -- baths, 1,328 sq ft
**Zestimate®: $204,000**
<u>What's This?</u>
**My Estimate:**

Views: 19

## Home Info

**Public Facts:**
Single family
1,328 sqft
Lot 6,596 sqft
Built in 2006

## Neighborhood & School:

**Neighborhood:**
--

**School District:**
--

## Charts & Data

### ZESTIMATE®: $204,000
- Value Range: $169,320 - $234,600
- 30-day change: $13,500
- *Zestimate updated: 02/05/2008*

### Last sale and tax info

**Sold 12/19/2006:**
   $207,500
**2008 Property Tax:**
   $446



EXHIBIT C

Form B6A
(10/05)

In re   **JOHN CHARLES HAYNES,**
     **JEAN L. HAYNES**

Case No.  **07-02041**

Debtors

# SCHEDULE A. REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether husband, wife, or both own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

**Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim."

If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|---|---|---|
| **Location: P.O. BOX 183, MARANA AZ (12229 N. SORA PLACE MARANA)**<br>**FIRST MORTGAGE: WELLS FARGO** | **DEBTORS RESIDENCE** | **C** | **250,000.00** | **210,000.00** |

|  | Sub-Total > | **250,000.00** | (Total of this page) |
|---|---|---|---|
|  | Total > | **250,000.00** |  |

  **0**  continuation sheets attached to the Schedule of Real Property

(Report also on Summary of Schedules)

Copyright (c) 1996-2007 - Best Case Solutions - Evanston, IL - (800) 492-8037        Best Case Bankruptcy

THE COOPER CASTLE LAW FIRM
fka THE COOPER CHRISTENSEN LAW FIRM, LLP

820 South Valley View Blvd
Las Vegas, Nevada 89107
Telephone (702) 435-4175
Facsimile (702) 435-4181

February 4, 2008

Via Facsimile (520) 792-0573

Eric Ollason, Esq.
182 N Court Avenue
Tucson, AZ 85701

RE: Debtor: JEAN L. HAYNES and JOHN CHARLES HAYNES
Loan No.: 203768932
Bankruptcy No.07-02041-TUC-JMM
Bankruptcy Chapter: 13
Bankruptcy Filed On: October 16, 2007
Our File No.: 08-01-0488

Dear Attorney Ollason:

On February 03, 2008, we received authorization from our client, Wells Fargo Bank, N.A., to act
on their behalf on the above referenced loan.

**Please see attached worksheet in compliance with Local Rule 4001.**

Your anticipated cooperation in this matter is greatly appreciated. If you have any questions,
please do not hesitate to contact us.

Very truly yours,

THE COOPER CASTLE LAW FIRM

Michael W. Chen, Esquire

Encl.
MC/yy


EXHIBIT D

# CHAPTER 13 LOCAL RULE 4001 Compliance Worksheet

| Loan: | 203768932 | Chapter: 13 |
|---|---|---|
| Mortgagor: | JEAN L. HAYNES and JOHN CHARLES HAYNES | BK #: 07-02041-TUC-JMM |
| Our Client: | Wells Fargo Bank, N.A. | Our File #: 08-01-0488 |

Your clients' current arrearage is:        $4,343.12

   3   monthly payments at     $1,381.04      $4,143.12
December 2007 through February 2008

Attorney Fees (Total Attorney's Fees will increase
above and beyond this stated amount if Secured      $200.00
Creditor has to file a Motion for Relief)

     Total Arrearage        $4,343.12

If your client disputes this arrearage, please check here:     ☐

Please note that our records reflect that the above payment arrearage is correct. Disputing the arrearage or attorneys fees will require that a motion be filed in order to allow the court to adjudicate the payment dispute. Requesting breakdowns of fees and costs or back up also will require that we file a motion to protect our clients' interest. You must obtain and provide to Secured Creditor copies of all disputed payments and we will obtain a payment history. We will contact you prior to the hearing date so that the payments and payment history can be reconciled.

Adequate Protection Order

If your clients desire an adequate protection order please check here:     ☐

(Please note that if you dispute payments or the amount of the attorneys fees and you want an adequate protection order for an amount less than the total amount of the arrearage set forth above then we will set a hearing to allow the Judge to resolve the disputed amount.)

# Terms under which you may request an adequate protection order:

One payment up front by (date)_____(no more than 10 days out) and Remainder of
Arrearage plus attorneys fees over six months with a ten-day default provision (each
default letter triggers a $100.00 fee)

☐

The Debtor will pay all arrearages in a lump sum payment on or before _____
(timely Adequate Protection Order will be issued with default provision for all future

payments)

☐

The Debtor will surrender the property please prepare a Stipulation and forward for

signature.

☐

If you desire any terms other than those set forth above please indicate the same:

We will not exceed repayment over more than six months, payment of less than the arrearage
amount, loan modifications, or putting post-petition arrearage through the plan. We must have
some submission in writing of your intent to enter an adequate protection order based on the
arrearage amount specified above under one of the above options for adequate protection or we
WILL file the Motion for Relief from Stay 5 business days after confirmation of fax of this letter.
Your client will avoid the filing fee by working these matters out prior to the filing of a motion.

We will not accept telephone tag or issues regarding our telephone system as a means of
delaying the filing of a motion and ask that you either fill out this sheet OR send written
confirmation via fax to (702) 435-4181.

If you have chosen an APO on any of the above terms and the same is acceptable, we will
prepare the Adequate Protection Order and forward it to you within one business day of your
written request. Please sign the adequate protection order and fax a copy of the same and mail or
courier the original to our office. If you do not sign the Adequate Protection Order and return it
to us within five (5) business days, we will set the motion for hearing. If you fax your signature
and fail to return the original, we will submit your faxed signature with an affidavit and have the
order entered by the Court.

Attorney Signature: _____ Date: _____
This motion will be filed on_____ **February 11, 2008** _____

```
                          ********************
                          ***   TX REPORT   ***
                          ********************

           TRANSMISSION OK

           TX/RX NO              4155
           CONNECTION TEL                    15207920573
           CONNECTION ID
           ST. TIME              02/04 12:21
           USAGE T               00'58
           PGS. SENT             3
           RESULT               OK
```

THE COOPER CASTLE LAW FIRM                 820 South Valley View Blvd
fka THE COOPER CHRISTENSEN LAW FIRM, LLP    Las Vegas, Nevada 89107
                                            Telephone (702) 435-4175
                                            Facsimile (702) 435-4181

February 4, 2008                     Via Facsimile (520) 792-0573

Eric Ollason, Esq.
182 N Court Avenue
Tucson, AZ 85701

RE:    Debtor: JEAN L. HAYNES and JOHN CHARLES HAYNES
       Loan No.: 203768932
       Bankruptcy No.07-02041-TUC-JMM
       Bankruptcy Chapter: 13
       Bankruptcy Filed On: October 16, 2007
       Our File No.: 08-01-0488

Dear Attorney Ollason:

On February 03, 2008, we received authorization from our client, Wells Fargo Bank, N.A., to act
on their behalf on the above referenced loan.

**Please see attached worksheet in compliance with Local Rule 4001.**

Your anticipated cooperation in this matter is greatly appreciated. If you have any questions,
please do not hesitate to contact us.

Very truly yours,

THE COOPER CASTLE LAW FIRM

1  Michael W. Chen, Esquire
   Arizona Bar No. 17967
2  THE COOPER CASTLE LAW FIRM
   f/k/a THE COOPER CHRISTENSEN LAW FIRM, LLP
3  820 South Valley View Boulevard
   Las Vegas, Nevada 89107
4  (702) 435-4175/(702) 435 4181 (facsimile)
   Loan No. 203768932 / Our File No. 08-01-0488

5
   Attorney for Secured Creditor
6  Wells Fargo Bank, N.A. successor by merger to Wells Fargo Home Mortgage, Inc. fka Norwest
   Mortgage, Inc.

7            UNITED STATES BANKRUPTCY COURT
8                DISTRICT OF ARIZONA

9  In re:

10     JEAN L. HAYNES,                    CHAPTER 13
       JOHN CHARLES HAYNES,               BANKRUPTCY NO.: 07-02041-TUC-JMM
11

12

13               Debtor(s)

14
   Wells Fargo Bank, N.A. successor by
15 merger to Wells Fargo Home Mortgage,
   Inc. fka Norwest Mortgage, Inc.
16
                 Movant(s)
17 v.

18     JEAN L. HAYNES and
       JOHN CHARLES HAYNES, Debtor(s),
19     Dianne Kerns, Trustee,

20               Respondant(s)

21
       **PROPOSED ORDER TERMINATING THE AUTOMATIC STAY**
22          **RE: DEBTOR AND BANKRUPTCY ESTATE**

23      IT IS HEREBY ORDERED, ADJUDGED, AND DECREED, that the Automatic Stay re:

24 Debtor and Bankruptcy Estate in the above-entitled Bankruptcy case is immediately extinguished

25

1   for all purposes as to Secured Creditor, Wells Fargo Bank, N.A. successor by merger to Wells

2   Fargo Home Mortgage, Inc. fka Norwest Mortgage, Inc., its assignees and/or successors in

3   interest, who may proceed with a foreclosure of and hold a Trustee's Sale of the subject Property

4   and take all steps necessary to regain title, interest and possession in accordance with their

5   contractual rights and statutory remedies on the property located and generally described as:

6   12229 N. Sora Place, Marana, AZ 85653, ("Property" herein) and legally described as follows:

7

8           LOT 77 OF GLADDEN FARMS BLOCK 21, A SUBDIVISION OF PIMA
            COUNTY, ARIZONA, ACCORDING TO THE MAP OR PLAT THEREOF OF
            RECORD IN THE OFFICE OF THE COUNTY RECORDER OF PIMA
9           COUNTY, ARIZONA, IN BOOK 60 OF MAPS AND PLATS AT PAGE 35
            THEREOF.

10

11   and Secured Creditor may commence any action necessary to obtain complete possession of the

12   subject Property.

           IT IS FURTHER ORDERED that any proof of claim filed by Wells Fargo Bank, N.A.
13
     successor by merger to Wells Fargo Home Mortgage, Inc. fka Norwest Mortgage, Inc. is hereby
14
     withdrawn.
15
           IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the ten (10) day
16
     waiting period of Bankruptcy Rule 4001 is hereby waived.
17

18   Submitted by:

19           THE COOPER CASTLE LAW FIRM

20
     By: _____   Date: _____
21       Michael W. Chen, Esq.
         Attorney for Secured Creditor
22       Wells Fargo Bank, N.A. successor by merger to Wells Fargo Home Mortgage, Inc.
         fka Norwest Mortgage, Inc.

23       NO OPPOSITION FILED / OPPOSITION FILED

24

25